UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 3:19-cr-42 (RNC) |
| vs. | : |
| PATRICK KATAMBWA | : October 8, 2019 |

### DEFENDANT'S SENTENCING MEMORANDUM

Mr. Patrick Katambwa has pled guilty to making a false statement in his application for asylum in the United States. The parties agree that the recommended Guidelines range for this offense is 1 to 7 months' incarceration and that a sentence within this range is appropriate. At the time of sentencing Mr. Katambwa will have been detained for nearly nine months, and he faces likely further detention during the course of anticipated immigration proceedings. Defendant submits that for the reasons outlined below the Court should therefore impose a sentence of time served.

### BACKGROUND

The presentence report in this case thoroughly outlines Mr. Katambwa's remarkable life story, which in many ways tracks the turmoil of central Africa's fitful struggles for stable democratic self-governance. Patrick was born in 1969, nine years after the end of Belgian colonial rule in the Congo and four years after Mobutu Sese Seko had seized power in the wake of five years of post-colonial violence and political chaos, replacing instability with totalitarian rule.

Mr. Katambwa's parents were displaced Rwandan Hutus who arrived in the country before his birth. After initially settling in South Kivu along the Rwandan border, his parents later moved to the capital city, Kinshasa, following efforts to force Rwandans to leave the country. Mr.

Katambwa's father worked as a civil servant, but he also became involved in politics—specifically, he was a member of the founding generation of a major party, the Union for Democracy and Social Progress (UDPS), which was founded in 1982 in resistance to Mobutu's rule.

As a young man Patrick himself grew increasingly political. A well-known local boxer, Patrick parlayed his notability into a role as a leader of the UPDS youth movement, where he played a role in organizing, rallying, and leafletting in protest of the regime.

Patrick's political activism in the face of totalitarian rule was dangerous business, and he was repeatedly beaten and arrested. His father, an elder of the UDPS movement, was likewise repeatedly imprisoned and tortured.

Political and social tensions in the country (at the time named Zaire) worsened in the mid-90s, as the fallout from the Rwandan civil war spilled across the border and the Mobutu regime became less stable. Confronted with the dual dangers of being an ethnic Rwandan in the Congo and being a prominent political dissident, Patrick fled the country for England, using false papers obtained using his deceased cousin's birth certificate, months before Mobutu's government fell, to be quickly replaced by Laurent Kabila (who would be succeeded by his son Joseph Kabila five years later upon the elder Kabila's assassination).

In England, Patrick continued his political activism while living and working under an assumed identity. In addition to agitating at the Congolese embassy in London and helping to organize the Congolese diaspora in England, Patrick actively supported his family in the Democratic Republic of Congo (or DRC -- a name change that accompanied the rise of the Kabila regime) with remittances. Particularly after his brother died in 2002 during the Second Congo War, Patrick (and likely his other siblings in Europe) financially provided for his children. During this

2

war, Mr. Katambwa's remaning siblings fled the country to neighboring Angola, while his parents remained behind.

In 2008, after more than a decade of living in England, Patrick was arrested and ultimately convicted of rape—a critical fact that Mr. Katambwa would later exclude from his application for asylum in the United States.

While in prison, Patrick continued his political advocacy, particularly in the wake of Joseph Kabila's refusal to hold elections following the end of his second (and constitutionally his final) term in 2016. Of note, Patrick recorded a video from prison and distributed via Youtube calling for the DRC government to hold elections and for Joseph Kabila to be brought to justice. A copy of the video is filed separately as **Exhibit 1** and is available at https://www.youtube.com/watch?v=Q-NMqBbs5Z4.

Following his release from custody in February of 2017, Patrick appeared in an opposition-affiliated television broadcast to again call for elections and that Kabila be brought to justice. The video, filed separately as **Exhibit 2** available at https://www.youtube.com/watch?v=Vvuuc_KRSAY, has been viewed over 8,000 times.

While on release, Patrick also sought asylum in the United Kingdom. That application was denied, and he was deported to the DRC in November of 2017. Immediately upon his return, the fears motivating his unsuccessful asylum claim in England became reality. The DRC was in the midst of violent political turmoil over the long-delayed presidential elections—an issue on which Mr. Katambwa had publicly taken a strong stance against the government. When he arrived back in the country, the state security forces took him into custody and beat him. Only after his family paid a substantial bribe was he able to escape custody, though the security forces continued to watch him

and extract ongoing bribes. After he participated in a protest march in December of 2017, police again arrested and beat him, requiring the payment of yet another bribe.

Faced with ongoing danger to his life and liberty, in March of 2018 Patrick slipped across the border and flew to the United States on a temporary visa related to his work with a nonprofit organization he had helped to fund with his earnings from England. Tragically, upon discovering his absence from his home, unidentified uniformed men burned down his family home, killing both of his parents and a domestic worker. Press coverage describing the incident is attached in various forms as **Exhibit 3** (including a rough Google Translate English rendering of the French text) and is available at http://www.rcongonews.com/2018/06/05/faute-de-visibilite-dans-cette-affaire-patrick-katambwa-et-sa-famille-contraints-de-vivre-dans-la-clandestinite/.

In the wake of the devastating loss of his parents, Patrick filed an ultimately successful asylum claim in the United States. With the assistance from the local Congolese community, Patrick obtained steady employment and began life anew. But in February of 2019, not quite a year after his arrival in the country, Patrick was arrested in this case. He has since remained in custody subject both to an ICE detainer and a detention order.

**THE 18 U.S.C. § 3553(a) FACTORS WEIGH IN FAVOR OF A TIME-SERVED SENTENCE**

In imposing sentence in this case, the Court must follow the dictate of 18 U.S.C. § 3553(a), which states that the Court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. As the Second Circuit explained in *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), the consequence of this provision is that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence. *See id.* at 142 (stating that where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires

4

imposition of the lower sentence). Here, the purposes of sentencing outlined in § 3553(a) are amply satisfied by a sentence of time served, which by the time of sentencing will be approximately 9 months, over the 1 – 7-month Guidelines range.

### Mr. Katambwa's history and character favor a sentence of time served.

As discussed above and in the PSR, Mr. Katambwa has demonstrated himself over the years to be a dedicated and courageous activist as well as an important source of support for his family and for his community. Though he committed a very serious offense in England, that offense, for which he has served his time, does not define him and, importantly, is not reflective of his time spent living productively in the United States.

### A sentence of time served adequately addresses the severity of the offense.

The proposed time served sentence—effectively an above-Guidelines sentence—more than adequately addresses Mr. Katambwa's conduct. His offense, a sin of omission, is one that flowed from a very real and understandable fear that what has happened to his parents would likewise be his fate if he were forced to return to the DRC.

### Additional prison time will not promote deterrence or rehabilitation.

This offense is one that arises from idiosyncratic circumstances and is not subject to ready repetition—and certainly not by Mr. Katambwa. To the extent that prison sanctions serve a general deterrent effect (a statistically unfounded proposition), the above-Guidelines sentence here, coupled with the collateral consequences discussed below, amply achieve that effect.

### Mr. Katambwa faces substantial collateral consequences that flow from this case.

In a typical case, discussion of the collateral consequences of conviction involves a litany of lost rights, of diminished employment prospects, of sacrificed privileges. For Mr. Katambwa, the collateral consequences may end his life. At the very least, Mr. Katambwa, who still has asylum

5

status and is entitled to procedural protections in immigration proceedings, will likely remain in custody for a significant period of time under an ICE detainer while his immigration case remains pending. If he is ultimately deported to the DRC, detention may be the least of his worries.

## CONCLUSION

For the reasons above Defendant requests that the Court impose a sentence of time served.

Respectfully submitted,

THE DEFENDANT,
Patrick Katambwa

OFFICE OF THE FEDERAL DEFENDER

Dated: October 8, 2019         s/ James P. Maguire
James P. Maguire
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: ct29355
Email: James_Maguire@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ James P. Maguire
James P. Maguire